# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| ULTIMATE NUTRITION, INC., | ) |
| Plaintiff, | ) |
| vs. | ) Case No. 3:23-CV-00677 (JCH) |
| LEPRINO FOODS COMPANY, | ) |
| Defendant. | ) |

## FIRST AMENDED COMPLAINT

Plaintiff, Ultimate Nutrition, Inc. ("Plaintiff" or "Ultimate Nutrition"), by its attorneys and as and for its First Amended Complaint against Defendant, Leprino Foods Company ("Defendant" or "Leprino"), alleges as follows:

## PARTIES

1. Plaintiff is a Connecticut corporation with its principal place of business at 21 Hyde Road, Farmington, Connecticut.

2. Defendant, Leprino, is a Colorado corporation with its principal place of business at 1830 West 38th Avenue, Denver, Colorado. Leprino claims to be the world's largest mozzarella cheese maker and top producer of whey protein and dairy ingredients, supplying its products to food and nutrition companies around the globe, including Ultimate Nutrition and many others located in Connecticut.

3. Ultimate Nutrition is engaged in the development, sale and distribution of high-quality nutritional supplements for body building, enhanced athletic performance and fitness. It operates its business from one facility located in Farmington, Connecticut.

4. Ultimate Nutrition's products are sold nationally and worldwide in over 100 countries. Since Ultimate Nutrition was founded in 1979 by the late Victor H. Rubino, one of

the top amateur power lifters in the United States at that time, and also a biochemist, Ultimate Nutrition's corporate mission and business ethos has been the development, production and sale of high quality, thoroughly researched nutritional and dietary supplements that are safe, effective, affordable and regulatory-compliant.

5. Ultimate Nutrition has been and remains an industry leader by producing and offering products that are known for their rigorous research and quality standards. Over the years, Ultimate Nutrition has sponsored many well-known athletes and celebrities and, for a number of years, was the title sponsor of the Mr. Olympia body building contest, which became prominent after helping launch the career of Arnold Schwarzenegger.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1332(a)(1) and 1441(b)(a), (b)(1), in that this is a civil action between a citizen of the State of Connecticut and a citizen of the State of Colorado, the amount in controversy exceeds $75,000.00 exclusive of interest and costs, and this action was removed by Leprino pursuant to 28 U.S.C. §§ 1441(a) and 1446.

7. Venue is proper under 28 U.S.C. §§ 1391(b)(1) and (c)(2).

## BACKGROUND

8. One of the most predominate and utilized ingredient for the products made and sold by Ultimate Nutrition is whey protein. In terms of volume supplied and gross revenue, Leprino is one of the largest suppliers of whey protein in the United States, including Connecticut, and it also has a significant international business presence.

9. Up until September 2021, Ultimate Nutrition and Leprino had a long-standing and extensive business relationship for a period of over 25 years, whereby Ultimate Nutrition ordered

from Leprino and Leprino supplied Ultimate Nutrition in Connecticut with whey protein which Ultimate Nutrition would use as an ingredient in its products. During that period, Ultimate Nutrition paid Leprino an aggregate amount of over $30 million for its whey protein and related products.

10. Indeed, prior to abruptly terminating its business relationship with Ultimate Nutrition, as recently as December 2020 Leprino had identified Ultimate Nutrition as a customer that was part of a Leprino sales initiative to grow whey sales volume.

11. The course of dealing established by the parties during their long-standing business relationship was by means of successive and consistent purchase orders submitted by Ultimate Nutrition which contained a projected delivery date for product in the quarter of the year immediately following the quarter of the year in which the orders were placed, whereupon Leprino would submit corresponding pro forma invoices to Ultimate Nutrition (the "distribution agreement"). This course of dealing established an implied-in-fact distribution agreement between Ultimate Nutrition and Leprino for purposes of Conn. Gen. Stat. § 42a-2-309(3) and/or Colo. Rev. Stat. Ann. § 4-2-309(3).

12. Beginning in or about 2014, Leprino required Ultimate Nutrition to pay, and Ultimate Nutrition paid Leprino, cash in advance before Leprino delivered any products ordered by Ultimate Nutrition from Leprino.

13. Based on a number of instances over the years, part of the course of dealing established by the parties was for Ultimate Nutrition to request and for Leprino to allow Ultimate Nutrition to take delivery of product scheduled for delivery in one quarter in the next succeeding quarter or future quarters, which was colloquially referred to as a "roll over" (hereinafter a "<u>roll over</u>" or "<u>roll overs</u>," as the context may require).

14.     During the parties' course of dealing, and particularly in the year 2021, roll overs in the whey protein industry, or at least a good faith negotiation for them, occurred with regularity and as such they constituted a usage of trade that informed and/or became a part of the terms of the parties' contracts as set forth in the purchase orders submitted by Ultimate Nutrition to Leprino and the corresponding pro forma invoices Leprino issued and sent back to Ultimate Nutrition.

15.     By ten separate purchase orders issued by Ultimate Nutrition to Leprino, seven of which were dated December 8, 2020 and three of which were dated December 15, 2020, and which were denominated P.O. Numbers 120820H, 120820J, 120820K, 120820L, 120820M, 120820N, 120820P, 121520A, 121520B and 121520A (the "Q1 Purchase Orders"), for which Leprino issued corresponding pro forma invoices, Ultimate Nutrition ordered for delivery in the first quarter of 2021 and Leprino agreed to sell 418,874 lbs. of whey protein (the "Ordered Q1 Product") for the unit prices set forth in the Q1 Purchase Orders, for an aggregate sale price of $1,304,541.19.

16.     By ten separate purchase orders issued by Ultimate Nutrition to Leprino, dated June 11, 2021 and denominated P.O. Numbers 061121A, 061121B, 061121C 061121D, 061121E, 061121F, 061121G, 061121H, 061121J and 061121K (the "Q3 Purchase Orders"), for which Leprino issued corresponding pro forma invoices, Ultimate Nutrition ordered for delivery in the third quarter of 2021, and Leprino agreed to sell, 416,404.85 lbs. of whey protein (the "Ordered Q3 Product") for the unit prices set forth in the Q3 Purchase Orders, for an aggregate sale price of $2,124,677.10.

17.     Prior to the close of the first quarter of 2021, on or about February 2, 2021, Leprino was contacted by a disgruntled unpaid supplier of Ultimate Nutrition, which was also a

regular customer of Leprino for its whey products, as well as a broker in the industry. In its contact and in a subsequent communication in February 2021, the supplier disparaged Ultimate Nutrition and its representatives and encouraged Leprino not to do business with Ultimate Nutrition.

18. Prior to close of the first quarter of 2021, but after February 2021, Ultimate Nutrition had requested Leprino for a roll over of all product ordered by the Q1 Purchase Orders, with the exception of the product ordered by Purchase Order No. 120820H (the "Q1 Product"), but the request was flatly denied by Leprino despite the parties' prior course of dealing and usage of trade in the whey protein industry.

19. By September 14, 2021, Ultimate Nutrition had not yet taken delivery of the Ordered Q3 Product and, in order to determine how much of it to take, had made repeated requests of Leprino for its fourth quarter pricing of whey protein, which Leprino refused to provide to Ultimate Nutrition even after its designated representative stated in a conference call on or around September 6, 2021 that Leprino would be providing Ultimate Nutrition a 4th quarter offer regardless of what Ultimate Nutrition took in Quarter 3. By this designated representative, Leprino also stated that it understood the uncertainty going on in the world at the time.

20. On September 14, 2021, Leprino gave Ultimate Nutrition an ultimatum that it needed to know within two weeks how much of the Ordered Q3 Product Ultimate Nutrition would be taking by the end of September 2021 and that, despite Ultimate Nutrition's request and the parties' prior course of dealing and usage of trade in the whey protein industry, Leprino would not allow Ultimate Nutrition to roll over any of it to the following quarter.

21. After this September 14, 2021 ultimatum was challenged by Ultimate Nutrition, and as a retaliatory measure, on the very next day, September 15, 2021, Leprino unreasonably

5

demanded that Ultimate Nutrition advise Leprino by that day how much of the Ordered Q3 Product Ultimate Nutrition would be taking delivery of in the third quarter of 2021.

## CAUSES OF ACTION

### COUNT ONE: BREACH OF IMPLIED-IN-FACT DISTRIBUTION CONTRACT

22. Plaintiff incorporates by reference paragraphs 1 through 21 of this First Amended Complaint as if fully set forth at length.

23. In the same communication in which the September 14, 2021 ultimatum was delivered, Leprino effectively terminated the distribution agreement between the parties, with no prior notice, by cancelling delivery of the Ordered Q3 Product other than product that had been ordered by P.O No. 061121E, refusing to provide any product to Ultimate Nutrition in quarter four of 2021, which it confirmed in an email communication dated September 29, 2021, and after delivering the Q3 Product that had been ordered by P.O No. 061121E, refusing to do any further business with Ultimate Nutrition in any subsequent quarter, all without reasonable notice in contravention of Conn. Gen. Stat. § 42a-2-309(3) and/or Colo. Rev. Stat. Ann. § 4-2-309(3).

24. As a result of the above, Ultimate Nutrition was forced to purchase from other whey suppliers so much of the Ordered Q3 Product, other than product ordered by P.O. No. 061121E, as had been ordered from Leprino by the Q3 Purchase Orders (the "Q3 Product") and was available, but at much higher prices, suffered a loss of profits as a result of not being able to purchase all of its whey protein needs in the third quarter of 2021 as had been ordered from Leprino, and abruptly had its preferred supply of whey protein cut off by Leprino without reasonable notice.

25. For the period from and after the close of the third quarter of 2021 until the end of the period which would constitute reasonable notification under Conn. Gen. Stat. § 42a-2-309(3)

and/or Colo. Rev. Stat. Ann. § 4-2-309(3) for the termination of the distribution agreement, which Ultimate contends is not less than 120 days, Ultimate Nutrition was forced to seek and purchase from other whey protein suppliers the whey protein needs of its business which, upon information and belief, could not be fulfilled to the same extent as they could have been fulfilled if Leprino had remained Ultimate Nutrition's whey protein supplier during such period of reasonable notification.  As a result, Ultimate Nutrition suffered a loss of profits as a result of not being able to purchase all of its whey protein needs during the period which would constitute reasonable notification under Conn. Gen. Stat. § 42a-2-309(3) and/or Colo. Rev. Stat. Ann. § 4-2-309(3) for the termination of the distribution agreement.

26.     As a further result of the foregoing, Ultimate Nutrition has been damaged in an amount to be determined at trial.

**COUNT TWO: BREACH OF CONTRACT (Q1 PRODUCT)**

27.     Plaintiff incorporates by reference paragraphs 1 through 26 of this First Amended Complaint as if fully set forth at length.

28.     Based upon a sequence of conduct which occurred in previous transactions between the parties, Ultimate Nutrition and Leprino established a course of dealing whereby, at Ultimate Nutrition's request, Leprino would allow Ultimate Nutrition to roll over delivery of product scheduled for delivery in one quarter to the very next quarter or succeeding quarters of the year (the "Roll Over Course of Dealing").  The Roll Over Course of Dealing is consistent with the usage of trade in the whey protein industry.

29.     The Roll Over Course of Dealing is fairly to be regarded as establishing a common basis of understanding for interpreting the parties' expressions and other conduct, particularly as it relates in this action to the Q1 Purchase Orders.

30. On and after February 2, 2021, after having been contacted by a disgruntled supplier who was also a customer of Leprino's, and at the direction of Leprino's senior management, Leprino became less communicative, cooperative and accommodating in its business dealings with Ultimate Nutrition.

31. On March 25, 2021, Leprino, in breach of the parties' agreement, which includes the Roll Over Course of Dealing, usage of trade, and an obligation of good faith in performance, refused to allow Ultimate Nutrition to roll over any of the Q1 Product into quarter three of 2021 or to even engage in good faith negotiations for such a roll over.

32. At the time Leprino refused to allow Ultimate Nutrition to roll over any of the Q1 Product into the next quarter, national and worldwide commerce had become in disarray by virtue of the COVID-19 pandemic, which resulted in many countries instituting lockdowns and port closures and the United States suffering substantial port and trucking congestion and delays driven by Covid-19 and container shortages. As a result of these conditions, it is a virtual certainty that many customers like Ultimate Nutrition also could not have taken delivery of all of their ordered product from Leprino and also would have requested roll overs.

33. Notwithstanding the pandemic and the market conditions describe above, and with their warehouses full of product, Leprino essentially raised pricing on Whey Protein Concentrate 80 (WPC80) and Whey Protein Isolate (WPI) from Quarter 1 2021 to Quarter 2 2021. This increase in pricing would have further decreased demand, which was already faltering due to external market conditions, and increased the need for customers to request roll overs.

34. The market conditions and price increases described above served as even greater reason for Leprino to allow the roll overs of Q1 Product that were requested by Ultimate Nutrition.

35. Leprino later claimed that it had instituted a policy that if a customer does not take delivery of a load of product as scheduled, that customer would be allocated a charge that would accrue every first of the month in which the delivery was not taken, thereby establishing that Leprino was permitting roll overs of product for other customers, but for a charge.

36. At no time did Leprino advise Ultimate Nutrition of any new policy it had concerning the accrual of a charge for roll over of product, until after it refused to roll over the Q3 Product for Ultimate Nutrition. Moreover, Leprino did not offer Ultimate Nutrition the option of paying a charge for rolling over any of the Q1 Product.

37. By refusing to allow Ultimate Nutrition to roll over any of the Q1 Product or to even engage in good faith negotiations therefor, Leprino breached its contract with Ultimate Nutrition, as a result of which Ultimate Nutrition has been damaged in an amount to be determined at trial.

**COUNT THREE: BREACH OF CONTRACT (Q3 PRODUCT)**

38. Plaintiff incorporates by reference paragraphs 1 through 37 of this First Amended Complaint as if fully set forth at length.

39. On or about Sep 14, 2021, Leprino, in breach of the parties' agreement, which includes the Roll Over Course of Dealing, usage of trade, and an obligation of good faith in performance, refused to allow Ultimate Nutrition to roll over any of the Q3 Product into the next quarter or to even engage in good faith negotiations for such a roll over.

40. At the time Leprino refused to allow Ultimate Nutrition to roll over any of the Q3 Product into the next quarter, national and worldwide commerce had become in disarray by virtue of the COVID-19 pandemic, which resulted in many countries instituting lockdowns and port closures and the United States suffering substantial port and trucking congestion and delays driven by Covid-19 and container shortages. As a result of these conditions, it is a virtual certainty that many customers like Ultimate Nutrition also could not have taken delivery of all of their ordered product from Leprino and also would have requested roll overs.

41. Notwithstanding the pandemic and the market conditions describe above, and with their warehouses full of product, Leprino essentially raised pricing on Whey Protein Concentrate 80 (WPC80) and Whey Protein Isolate (WPI) from Quarter 1 2021 to Quarter 2 2021 and then significantly higher in Quarter 3 2021.  WPC80 was $2.183 per lb. ($90,092.65 per truck) in quarter 1, then increased to $2.88 per lb. ($118,857.92 per truck) in quarter 2, and then increased significantly more in quarter 3 to $4.71 per lb. ($194,382.23 per truck). WPI was $3.1144 ($130,454.12 per truck) in quarter 1, then increased to $3.85 per lb. ($161,266.49 per truck) in quarter 2, and then increased significantly more in quarter 3 to $5.72 per lb. ($239,595.93 per truck). This dramatic increase in pricing would have further decreased demand, which was already faltering due to external market conditions, and increased the need for customers to request roll overs.

42. The market conditions and price increases described above served as even greater reason for Leprino to allow the roll overs of Q3 Product that were requested by Ultimate Nutrition.

43. Leprino later claimed that it had instituted a policy that if a customer does not take delivery of a load of product as scheduled, that customer would be allocated a charge that

would accrue every first of the month in which the delivery was not taken, thereby establishing that Leprino was permitting roll overs of product for other customers, but for a charge.

44. At no time did Leprino advise Ultimate Nutrition of any new policy it had concerning the accrual of a charge for roll over of product, until after it refused to roll over the Q3 Product for Ultimate Nutrition. Moreover, Leprino did not offer Ultimate Nutrition the option of paying a charge for rolling over any of the Q3 Product.

45. By refusing to allow Ultimate Nutrition to roll over any of the Q3 Product or to even engage in good faith negotiations therefor, Leprino breached its contract with Ultimate Nutrition, as a result of which Ultimate Nutrition has been damaged in an amount to be determined at trial.

**COUNT FOUR: BREACH OF IMPLIED COVENANT**
**OF GOOD FAITH AND FAIR DEALING**

46. Plaintiff incorporates by reference paragraphs 1 through 45 of this First Amended Complaint as if fully set forth at length

47. The parties' implied-in-fact distribution agreement and/or the contracts formed by the Q1 Purchase Orders and corresponding pro forma invoices and the Q3 Purchase Orders and corresponding pro forma invoices, each contain an implied covenant of good faith and fair dealing requiring that neither party do anything that will injure the right of the other to receive the benefits of the agreement.

48. The acts by which Leprino injured or impeded Ultimate Nutrition's right to receive benefits that it reasonably expected to receive under the distribution agreement, the Q1 Purchase Orders, the Q3 Purchase Orders and the pro forma invoices corresponding thereto, consisted of its: (i) failing and refusing to provide Ultimate Nutrition with Leprino's pricing of whey protein for the fourth quarter of 2021, thereby impeding Ultimate Nutrition's decision of

11

how much Q3 Product to take delivery of prior to the end of September 2021 and resulting in Leprino cancelling all ordered deliveries of Q3 Product, (ii) unreasonably demanding that Ultimate Nutrition advise Leprino within an unduly short period of time how much Q3 Product Ultimate Nutrition would be taking by the end of September 2021 and, when a response was not forthcoming, cancelling all ordered deliveries of Q3 Product, refusing to take orders from Ultimate Nutrition for the fourth quarter of 2021 and otherwise terminating the parties' business relationship; (iii) acting on the word of a disgruntled supplier of Ultimate Nutrition, making it more difficult for Ultimate Nutrition to do business with Leprino, including its refusal to allow the roll over of the Q1 Product and Q3 Product as requested by Ultimate Nutrition; and (iv) failing to engage in good faith negotiations with Ultimate Nutrition for the requested roll overs.

49. Such acts were taken by Leprino in bad faith based on the following: Leprino was improperly influenced by, and is believed to have been acting in cooperation with, a disgruntled unpaid supplier of Ultimate Nutrition with whom Leprino does business, which disparaged Ultimate Nutrition and its representatives and encouraged Leprino not to do business with Ultimate Nutrition, leading Leprino to take the adverse actions against Ultimate Nutrition that are alleged in the above paragraph 48.

50. As a result of the foregoing, Ultimate Nutrition has been damaged in an amount to be determined at trial.

**COUNT FIVE: VIOLATION OF THE CONNECTICUT UNFAIR TRADE PRACTICES ACT (CUTPA) CONNECTICUT GENERAL STATUTES §§ 42-110A, ET SEQ.**

51. Plaintiff incorporates by reference paragraphs 1 through 50 of this First Amended Complaint as if fully set forth at length

52. Leprino knew or should have known that Ultimate Nutrition was heavily reliant upon Leprino, and that Leprino was Ultimate Nutrition's preferred supplier, for the supply of

12

whey protein for Ultimate Nutrition's products, many of which required whey protein as the predominate ingredient.

53. Leprino engaged in the following acts or practices which are unfair or deceptive acts or practices under CUTPA:

(a) abruptly and without reasonable notice terminating the distribution agreement and its business relationship with Ultimate Nutrition, in violation of Conn. Gen. Stat. § 42a-2-309(3);

(b) acting on communications it received from a disgruntled supplier of Ultimate Nutrition, and without giving Ultimate Nutrition an opportunity to respond, becoming more restrictive and less cooperative, communicative and accommodating in its business dealings with Ultimate Nutrition, ultimately leading to its refusal to allow Ultimate Nutrition to roll over any of the Q1 Product or Q3 Product and the termination of its business relationship with Ultimate Nutrition;

(c) notwithstanding having targeted Ultimate Nutrition as a customer that was part of its sales initiative to grow whey sales volume, and acting in cooperation with or under the influence of a disgruntled supplier of Ultimate Nutrition with which it did business, and to further its interests in that business relationship, Leprino failed to allow Ultimate Nutrition to roll over the Q1 Product to the third quarter of 2021 and the Q3 Product to the fourth quarter of 2021, cancelled delivery of its orders for the Q1 Product and the Q3 Product and refused to do business with Ultimate Nutrition thereafter;

    (d)    failing to provide Ultimate Nutrition with the option of incurring a charge for the roll over of either the Q1 Product or the Q3 Product as requested by Ultimate Nutrition, while establishing a policy for its other customers for the roll over of scheduled deliveries for a charge;

    (e)    despite its requests, failing and refusing to provide Ultimate Nutrition with Leprino's pricing of whey protein for the fourth quarter of 2021, thereby impeding Ultimate Nutrition's decision of how much Q3 Product to take delivery of prior to the end of September 2021 and resulting in Leprino cancelling all ordered deliveries of Q3 Product; and

    (f)    failing to engage in good faith negotiations with Ultimate Nutrition for its requested roll overs.

54.    Leprino's unfair or deceptive acts as aforesaid offend public policy as expressed by Conn. Gen. Stat. § 42a-2-309(3), were immoral, unethical, oppressive, or unscrupulous, and occurred in the conduct of trade or commerce.

55.    Leprino's unfair or deceptive acts as aforesaid further caused Ultimate Nutrition substantial injury, in that it was abandoned on virtually no notice by its most important whey protein supplier and as a result was forced to incur substantial additional costs in buying that product and suffered substantial lost profits.

56.    As a direct and proximate result of Leprino's unfair or deceptive acts as aforesaid, Ultimate Nutrition has suffered an ascertainable loss of money, property, or both.

## PRAYER FOR RELIEF

**WHEREFORE**, by virtue of the foregoing, Ultimate Nutrition, Inc. demands:

1.    Compensatory, consequential and incidental damages;

2. Prejudgment interest;

3. Postjudgment interest;

4. Attorney's fees and costs.

5. Punitive damages under CUTPA.

6. Such other relief as the Court deems appropriate.

Dated at Bridgeport, Connecticut this 21st day of December, 2023.

By:   /s/ Monte E. Frank
Irve J. Goldman
Monte E. Frank
Pullman & Comley, LLC
850 Main Street, P.O. Box 7006
Bridgeport, CT  06601-7006
Juris No. 47892
Telephone  203 330 2000
Facsimile 203 576 8888
*igoldman@pullcom.com*
*mfrank@pullcom.com*

Attorneys for Plaintiff Ultimate Nutrition, Inc.

## CERTIFICATE OF SERVICE

    I hereby certify that on December 21, 2023 a copy of foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

                              */s/ Monte E. Frank*
                              Monte E. Frank

Active/79690.1/CARNDT/15036821v1